**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION**

MICHELLE WALKER,                                    Case No. 3:26-cv-00151-DPM

Plaintiff,

v.

RETURN TO THE LAND; RETURN TO THE
LAND, OZARKS CHAPTER; WISDOM
WOODS LLC; ERIC ORWOLL; PETER
JULIUS CSERE; GAVIN BAKER; PETER
NEUGEBAUER; and SCOTT THOMAS
HALLOWOOD,

Defendants.

**DEFENDANTS WISDOM WOODS LLC, ERIC ORWOLL, PETER CSERE, AND
SCOTT THOMAS HALLOWOOD'S MOTION TO DISMISS FOR LACK OF SUBJECT
MATTER JURISDICTION INCORPORATED BRIEF IN SUPPORT**

Defendants Wisdom Woods LLC, Eric Orwoll, Peter Csere, and Scott Thomas Hallowood

jointly move to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of

subject matter jurisdiction. Plaintiff Michelle Walker brings this lawsuit under the Fair Housing

Act and other related statutes alleging that Defendants discriminated against her with respect to a

sale or rental of land. But Walker lacks Article III standing, because she never applied to buy land

from anyone, never received an offer to sell her land, never made an offer to buy land, never saw

an advertisement to sell her land, and never communicated with a single person who had the

authority to sell her anything.

**INTRODUCTION**

Consider a hypothetical. A group of Harvard Law School alumni — several of whom sit

on Harvard's alumni advisory board — form a small, prestigious law firm. The firm does not

advertise job openings; it has no public hiring page and posts to no job boards. Internally, though

never advertised anywhere, the firm has criteria for its attorneys: attorneys must be licensed to

practice law; attorneys must work at the firm full-time and exclusively; attorneys must be willing to relocate to the firm's city; attorneys must work in the office during office hours, remote work is not allowed; attorneys must have expertise in the firm's practice areas; attorneys must be admitted to certain state bars; and attorneys must have graduated from a law school in the Ivy League — the firm does not specify which ones. Finally, to join the firm, an attorney must be personally invited to visit the firm by an existing partner and be accepted by a majority vote of the partnership. The firm has no formal affiliation with Harvard. It simply happens that many of its partners are Harvard graduates and active alumni, some in leadership roles at the university.

A young woman named Jane decided she wanted to work at that firm. She only heard about the firm from a report on the news. Jane is not a lawyer. She does not meet a single one of the firm's other criteria — she has no intention of relocating, she only wants to work part time and from home, she has no bar admission and no practice-area expertise. But she understood from the news, though she never heard it herself, that Harvard once advised prospective students that if they wanted to work at that prestigious firm, they should attend Harvard Law. So based on this, she applied to Harvard Law, erroneously believing that if admitted she would automatically be eligible for a job at the firm.

The Harvard application asked her a number of questions, including questions about her LSAT score, her undergraduate grades, and about her race and nationality (which Harvard considered as a factor in admissions for decades). She answered that her father's family came to America from England in the 1600s and her mother's side descends from Russian Jewish immigrants. Her husband is of Irish and Chinese descent. The application also required a passport-sized photo of the applicant.

Though her LSAT score and undergraduate grades were well below Harvard's typical range, remarkably, she was granted an interview. At the interview, she persistently and repeatedly asked the Harvard Law interviewer about the firm. The interviewer said he was aware of the firm and boasted that if Jane was admitted to Harvard, she would be a candidate at all of the most prestigious law firms. She asked more questions about how to apply for a job at the firm, but the interviewer would not answer, and simply said she could find out more if accepted. At the end of the interview, she was told "don't call us, we'll call you." Jane called anyway, every week, to check on her application status. Eventually, Harvard sent her a rejection letter, telling her only that she is "not an ideal fit."

After her rejection, Jane did a deep dive into Harvard's history and learned that Harvard has a troubling record of discriminating against Asian and Jewish Americans. The Supreme Court held, in *Students for Fair Admissions v. Harvard*, 600 U.S. 181 (2023), that Harvard discriminated against Asian American applicants. She learned on the internet that in 1934, Harvard welcomed home a Harvard-educated high-ranking Nazi official for his class reunion, and Harvard to this day maintains a fellowship named for a Nazi. The Department of Justice is currently pursuing a civil rights action against Harvard over antisemitism, and Harvard settled a lawsuit brought by a Jewish student, Alexander "Shabbos" Kestenbaum, who accused Harvard of tolerating antisemitic harassment. Jane concluded that Harvard rejected her because of her and her husband's Jewish and Chinese ancestry. So she sued — not Harvard, but the law firm. She alleged that the firm conspired with Harvard to reject her for a job that she never applied for.

That hypothetical lawsuit would not survive the first motion. Jane cannot prove that she was rejected by the firm because she never applied. She never saw a job posting, an application, or a website. She never met anyone at the firm and does not know anyone from the firm. She does

not even know if the firm is actually hiring or if she is qualified. Had she inquired, she would have learned that she is utterly unqualified in every way and would not be invited to join the firm even if she graduated Harvard Law with honors. She would also have learned that even if offered to join the firm, she would not have accepted because it would require her to relocate and to report for work every day to the office, and she has no intention of doing either. Jane has no standing to sue, and her case would properly be dismissed.

The hypothetical about Jane is directly analogous, allegation for allegation, with this case. Substitute Harvard for Return to the Land ("RTTL") and the law firm for Wisdom Woods LLC. Though the Complaint erroneously conflates the two, RTTL and Wisdom Woods are completely separate entities with entirely separate structures and purposes. RTTL is an unincorporated private membership organization with over 1,000 members worldwide. It is primarily an online community that occasionally hosts in person meetups and family events. It does not and has never owned or engaged in the sale of real estate. Wisdom Woods, LLC was formed by a small number of RTTL members who joined together and privately purchased a single piece of land in Eastern Arkansas to build an intentional community where they could live together, homestead, and raise their children. RTTL does not control Wisdom Woods and Wisdom Woods does not control RTTL. They are separate and independent of each other. Orwoll, Csere, and Hallowood (the "Individual Defendants") are members of RTTL, and are also among the handful of members who live at Wisdom Woods.

Plaintiff Michelle Walker never applied to buy land from Wisdom Woods LLC or from the Individual Defendants. She never even met or attempted to contact them, let alone notify them that she was interested in purchasing land from them. All that she did was apply to join RTTL — a separate and independent private membership association that charges a one-time $25 lifetime

membership fee. RTTL has never owned, sold, or rented a single acre of real estate to anyone. They do not and have never advertised that they own, rent, or sell land.

This lawsuit is equivalent to Jane suing the law firm and its individual partners because she was rejected by Harvard. Speculation about what a party *would have done* is not the same as alleging what a party did. Had Walker actually applied to Wisdom Woods, she would have discovered that Wisdom Woods does not violate the Fair Housing Act at all. By avoiding an actual test, she is attempting to drag Wisdom Woods into federal court on nothing but speculation about a transaction that never occurred with a party that it never met.

## JURISDICTIONAL STANDARDS

This Court lacks subject matter jurisdiction unless Plaintiff establishes standing as to each Defendant. Standing requires (1) a concrete, particularized injury in fact; (2) fairly traceable to that defendant's own conduct; and (3) redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Plaintiff bears the burden of establishing each element for each Defendant. *Id.* at 561.

Because Defendants raise a factual, not merely facial, challenge to jurisdiction, the Court may consider evidence outside the Complaint — including the accompanying Declarations of the Individual Defendants and the Wisdom Woods Operating Agreement — without treating the Complaint's allegations as true. *Osborn v. United States*, 918 F.2d 724, 729 n.6, 730 (8th Cir. 1990).

## FACTUAL BACKGROUND

Plaintiff Michelle Walker resides in the St. Louis, Missouri area. (Compl. ¶ 94.) "[H]er father's side of the family is from England, [and] her mother's side of the family consists of Russian Jewish immigrants," though "she is a Christian." (Compl. ¶¶ 97, 98.) "[H]er husband is

of Irish and African descent, and [ ] her children are a mix of her and her husband's ancestry." (*Id.*)

Defendant Return to the Land ("RTTL") is an unincorporated, worldwide private membership association with well over 1,000 members residing across the United States, Canada, Europe, and beyond. (Decl. of Eric Orwoll ¶ 3.) It does not own real estate, and it does not sell, rent, lease, or otherwise offer real estate to anyone, member or non-member. Its members' primary activities are social, including meetups, gatherings, and similar associational events. (*Id.* ¶ 3.) Defendant Eric Orwoll is the President and a co-founder of RTTL. (Compl. ¶ 24.)

Defendant Wisdom Woods LLC is a separate Arkansas limited liability company formed by a small group of individuals — approximately thirty-one of RTTL's more than 1,000 members, or roughly 3% — for the purpose of jointly owning a single property in rural Arkansas, sharing the associated expenses, and living together as an intentional community. (Decl. of Eric Orwoll ¶ 5.) It is not a subsidiary of RTTL and is not controlled by RTTL. It has its own, separate, and in fact stricter admission process than RTTL, including Board approval, an in-person visit, and a background check; acceptance into RTTL does not carry any right to join Wisdom Woods. (*Id.* ¶¶ 5–6.)

RTTL and Wisdom Woods are separate entities. RTTL's website currently references "collective land ownership" as one activity that members may pursue on their own initiative, but RTTL itself does not manage, control, or participate in that activity. Only about 3% of RTTL's membership is currently involved in Wisdom Woods. (*Id.* ¶ 4.) About 97% of RTTL members have no involvement in Wisdom Woods.

Wisdom Woods has no website, has never advertised anywhere, and has never listed any property for sale or rent on any platform; there is no application available to the general public to

acquire an interest in it. (*Id.* ¶ 7.) Ownership in Wisdom Woods is not open to the public: existing members may transfer an interest only by personal invitation to someone they already know, and admission additionally requires Board approval, an in-person visit, and a criminal background check. (*Id.* ¶¶ 6, 8.) Wisdom Woods does not have any restrictions based on race or religion. Wisdom Woods functions no differently than it would if one individual owned the property personally and invited people he knew to live there; the LLC structure exists only so the residents can share expenses and responsibilities among themselves, not to facilitate a public real estate offering. (*Id.* ¶ 8.) Orwoll, Csere, and Hallowood (the "Individual Defendants") are each members of RTTL and are also among the thirty-one members of Wisdom Woods. (Decl. of Eric Orwoll ¶¶ 2, 5.)[1]

In November 2025, Walker applied for membership in RTTL's private membership association. (Compl. ¶ 93.) "Ms. Walker learned about RTTL from seeing a piece about the community in the news." (Compl. ¶ 94.) After watching that "news piece," she gathered from the news piece that RTTL was selling land for vacation homes and/or investment opportunities, and that she could purchase land "in the RTTL Arkansas community" for approximately $2,000 or less an acre. (Compl. ¶¶ 94–96.) She also gathered from the news piece that the community promoted "land stewardship, self-sufficiency, and rural living," and "she wanted to be part of the community" because "she liked the idea of returning to the land," and she believed that the community "honors our nation with a focus on nature." (Compl. ¶¶ 96, 100.) "Walker went to the RTTL website to apply for membership during the first week of November 2025." (Compl. ¶ 96.) She does not allege she saw any advertisement for land for sale or rent from RTTL or from anyone before she applied for membership.

---

[1] Defendants Gavin Baker and Peter Neugebauer have not been served and do not join in this motion.

The RTTL application asked Walker to describe her ancestry, her sexual orientation, and her views on other topics, including religion, segregation, multiculturalism, gay marriage, and transgenderism. (Compl. ¶¶ 97-99.) Walker was interviewed by someone from RTTL in mid-December 2025. (Compl. ¶ 101.) Walker alleges that the interviewer asked her "whether she belonged to any other white nationalist groups," and she responded that she did not. (Compl. ¶ 103.) She also alleges that "the RTTL interviewer confirmed Ms. Walker's understanding that there was a $25 fee to become a member of the LLC and that approval of membership was required before she could purchase an interest in any land." (Compl. ¶ 104.) However, "the interviewer would not answer Ms. Walker's specific questions about the options for purchasing land and the size of plots, responding that all of the specific information was in the membership agreement she would receive if she was accepted. (*Id.*) Weeks later, she logged into her RTTL website portal and read a message stating that her application to join was not accepted as she "was not an ideal fit for RTTL."

She does not allege that she ever contacted Wisdom Woods LLC or any Individual Defendant, at any time, for any reason. (*See generally* Compl. ¶¶ 93–105.)

## ARGUMENT

**I.**    **Walker Lacks Standing Because She Never Had Any Direct Contact With Wisdom Woods, the Individual Defendants, or Anyone Else With Authority to Sell Her Land.**

### A. Walker's Own Allegations Show She Knew Nothing About Wisdom Woods and Never Tried to Find Out.

The Complaint's own factual allegations establish that Walker never had, and never sought, any contact with or actual information about Wisdom Woods or the Individual Defendants before suing them. By her own account, everything she "understood" about the community came from a single, unspecified television or online "news piece," not from RTTL, not from Wisdom Woods, and not from any Defendant. (Compl. ¶ 94.) What she gathered from that news piece was not a

warning of discrimination but an endorsement. She understood that the community valued "land stewardship, self-sufficiency, and rural living," and after learning about the community from the news piece, "she wanted to be part of the community" because "she liked the idea of returning to the land," and she believed that the community "honors our nation with a focus on nature." (Compl. ¶¶ 96, 100.) Given the allegation in the Complaint, Ms. Walker was not reliably informed about RTTL or Wisdom Woods when she applied for RTTL membership.

In FHA cases like this one, where the plaintiff has not made direct contact with the defendants, the plaintiff must have been "reliably informed" of any discriminatory policy to establish standing. *See 273 Lee Ave. Tenants Ass'n v. Naftali Steinmetz & 273 Lee Realty, LLC*, 330 F. Supp. 3d 778, 795 (E.D.N.Y. 2018) (citing *McClain v. Am. Econ. Ins. Co.*, 424 F.3d 728, 733 (8th Cir. 2005)). Walker was not reliably informed of anything. By her own account, her only source of information about any of the Defendants was a third-party "news piece" whose content, author, and accuracy she does not describe. (Compl. ¶ 94.) She does not allege that she saw or even heard of an actual offer or advertisement to purchase land from any Defendant. What Walker says she took from that news piece shows the opposite of a discriminatory policy: she alleges that she agreed with RTTL's values, including "land stewardship, self-sufficiency, and rural living," she understood that the community "honors our nation," and that her family would enjoy vacationing there or else the property would be a good investment. (Compl. ¶¶ 96, 100.)

Walker's lack of basic research about Wisdom Woods and the Individual Defendants is pervasive throughout the Complaint. She does not allege that she knew anything about the land or the group other than some vague beliefs about "returning to the land" and that there was some land of unknown size located somewhere in the Ozarks. When Walker approached RTTL for membership, she conflated RTTL with an unknown LLC and understood that "individuals could

join RTTL's LLC for $25" and that approved members could then purchase land "for approximately $2,000 or less an acre." (Compl. ¶ 95.) Were the lots an acre in size or 100 acres in size? She didn't know, meaning that the land could be $2,000 or $200,000. Did the land include houses or was it a vacant lot? She didn't know. She admits that she had "questions about the options for purchasing land and the size of plots." (Compl. ¶ 104.)

Her lack of reliable information about RTTL is further demonstrated by the internal inconsistencies within the Complaint. For instance, in Paragraph 58, the Complaint alleges falsely that RTTL "runs a for-profit LLC that uses land and land sales to generate revenue for its members." But in Paragraph 88, the Complaint falsely alleges that RTTL is a not-for-profit that "considerably undervalues the land in its Arkansas community" by selling land "well below the market rate for vacant land in the region" to pursue its "central mission [ ] to provide permanent homes for white people." (Compl. ¶¶ 58, 88.) In fact, RTTL has no LLC of its own, has never owned any land, and has never sold or rented a single acre to anyone at any price. (Decl. of Eric Orwoll ¶ 3.)

According to her own account, Walker had months to investigate but did nothing other than fill out an application with the wrong entity. Walker does not allege she ever learned or sought to learn whether the news piece reported accurately, who actually owns the property she hoped to purchase, what entity or individuals she needed to approach, or what criteria governed eligibility to buy from them. She did not understand that Wisdom Woods was a homestead and not a vacation destination or an investment opportunity, and that even if a property was for sale, she would not be eligible unless she intended to move there. She did not know that admission to Wisdom Woods requires a personal invitation from an existing member — a threshold requirement that has nothing to do with RTTL membership at all. (*Id.* ¶ 6.) She does not allege that she ever sought such an

invitation from anyone, at any time. In short, Walker's own Complaint alleges that she saw a single vague news story about a group that she knew nothing about, assumed wrongly that she could purchase land from RTTL as a vacation home or an investment, and then sued unrelated Defendants that she never researched, never approached, and never had anything to do with.

### B. The Law Requires Direct Contact With the Actual Housing Provider Before a Plaintiff May Sue.

In order to make out a *prima facie* case of a violation of sub-section 3604(a) for discriminatory housing refusal, a plaintiff must show (1) that she is a member of a statutorily protected class (2) who applied for and was qualified to rent or purchase housing and (3) was rejected (4) although housing remained available. *Cf. Rowe v. Union Planters Bank,* 289 F.3d 533, 535 (8th Cir. 2002) (citing *Noland v. Commerce Mortg. Co.,* 122 F.3d 551, 553 (8th Cir. 1997)); *Soules v. United States Dep't of Housing & Urban Dev.,* 967 F.2d 817, 822 (2d Cir. 1992).

Walker cannot prevail as to Wisdom Woods or the Individual Defendants because she never applied to purchase anything from them. *Saunders v. Farmers Ins. Exch.*, 440 F.3d 940, 942 (8th Cir. 2006) (plaintiffs "cannot establish a 'direct injury' without showing a 'direct contact' between the plaintiffs and the defendant"); *McClain v. American Econ. Ins. Co.*, 424 F.3d 728 (8th Cir. 2005); *Chorosevic v. MetLife Choices*, 2007 U.S. Dist. LEXIS 54332, at *18 (E.D. Mo. July 26, 2007) ("As the Eighth Circuit has made clear, where there is no contact with a defendant, there is no injury-in-fact and, ergo, no standing as to that named defendant."). *See also 273 Lee Ave. Tenants Ass'n v. Naftali Steinmetz & 273 Lee Realty, LLC*, 330 F. Supp. 3d 778, 793 (E.D.N.Y. 2018) (citing *McClain v. American Econ. Ins. Co.*, 424 F.3d 728 (8th Cir. 2005)) ("The Court agrees with Defendants that Plaintiffs cannot support a claim that they ever sought an apartment and were then denied the opportunity to rent an apartment from Defendants[.]").

Count I of the Complaint alleges that Defendants violated three separate provisions of the FHA: § 3604(a) (refusing to sell or rent after a bona fide offer, or otherwise making a dwelling unavailable or denying it); § 3604(b) (discriminating in the terms, conditions, or privileges of a sale or rental); and § 3604(c) (making, printing, or publishing a discriminatory notice, statement, or advertisement). (Compl. ¶ 109.) None of the three applies to Wisdom Woods or the Individual Defendants. Section 3604(a) requires a refusal to sell or rent "after the making of a bona fide offer," or a refusal to negotiate for, or other denial of, a dwelling. Walker never made an offer — bona fide or otherwise — to Wisdom Woods or to any Individual Defendant, and none of them ever refused her anything, negotiated with her, or denied her a dwelling, because none of them ever heard from her at all. (Decl. of Eric Orwoll ¶¶ 9, 12–14; Decl. of Peter Julius Csere ¶¶ 4, 7–9; Decl. of Scott Thomas Hallowood ¶¶ 4, 7–9.) At best, by her own account, she inquired with RTTL about the possibility of purchasing land, but she did not know who the owner was, where the land was, how large it was, whether there was a house on the land, or any other details. As it turns out, the information she had was wrong. She was not speaking with the owner or anyone authorized to speak on behalf of the owner. Moreover, as the Complaint alleges, the land is owned by individual LLC members. She does not allege that any of the LLC members ever offered to sell their shares. Her allegations fail to meet the second and third elements because she never made a bona fide offer and was never rejected. Moreover, she does not allege any facts that show that the housing remained or remains available.

Without an offer, there is nothing for § 3604(a) to reach. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 374 (1982) ("…Congress, in prohibiting discriminatory refusals to sell or rent in § 804(a) of the Act, 42 U. S. C. § 3604(a), required that there be a 'bona fide offer' to rent or purchase …"); *Soules*, 967 F2d at 822 ("To make out a *prima facie* discriminatory housing refusal case, a

plaintiff must show that he is a member of a statutorily protected class *who applied for* and was qualified to rent or purchase housing and was rejected although the housing remained available.") (emphasis added).

Section 3604(b) also prohibits discrimination in the "terms, conditions, or privileges" of a sale or rental, or in services or facilities provided in connection with one. There was no sale, no rental, and no negotiation of any kind between Walker and Wisdom Woods or the Individual Defendants — and therefore no terms, conditions, or privileges of a transaction for § 3604(b) to have discriminated within. A provision that regulates the terms of a transaction cannot be violated where no transaction, and no discussion of one, ever took place.

Section 3604(c) prohibits making, printing, publishing, or causing to be made, printed, or published, a notice, statement, or advertisement indicating a discriminatory preference "with respect to the sale or rental of a dwelling." Wisdom Woods and the individual Defendants have never made, printed, published, or authorized any advertisement of any kind — let alone one referencing race or religion. (Decl. of Eric Orwoll ¶¶ 7, 15–17; Decl. of Peter Julius Csere ¶¶ 10, 12; Decl. of Scott Thomas Hallowood ¶¶ 10, 12.) Walker does not allege that she saw an advertisement, but only that she saw some undescribed "news piece," and according to her own account, she understood the description to be favorable, prompting her to apply to RTTL for membership.

Not only does she lack standing for lack of a direct contact with the Defendants, but because none of the three theories in the Complaint states a plausible claim against Wisdom Woods or the Individual Defendants, Walker's FHA claim against them fails independently of, and in addition to, her lack of standing.

**II.      <u>Walker Cannot Meet the Futile Gesture Standard.</u>**

Walker may argue that applying to Wisdom Woods would have been futile, and that her claims therefore survive under the futile gesture theory. Under that theory, a member of a protected class's failure to apply for a rental or sale does not prejudice her claims where: (1) the plaintiff is a member of a racial minority who was a potential bona fide buyer of the property and financially able to purchase it at the time it was offered for sale; (2) the defendant discriminated against people of the plaintiff's race; (3) the plaintiff was reliably informed of the policy of discrimination and would have taken steps to buy but for the discrimination; and (4) the defendant would have discriminated against the plaintiff had she applied. *McClain*, 424 F.3d at 733 (citing *Pinchback v. Armistead Homes Corp.*, 907 F.2d 1447, 1451–52 (4th Cir. 1990)); *Lawrence v. County of Orange*, 2012 U.S. Dist. LEXIS 207366, at *25 (S.D.N.Y. Sept. 20, 2012) ("A FHA plaintiff who does not actually seek the housing at issue may invoke futility to establish the violation, but faces the *'difficult task' of establishing: … plaintiff was reliably informed of the policy of discrimination* …") (emphasis added).

To invoke the theory, Walker must show that her interest in purchasing property from Wisdom Woods or the Individual Defendants was cut short by "actual knowledge" of a discriminatory practice. *See Darby v. Heather Ridge*, 806 F. Supp. 170, 174 (E.D. Mich. 1992); *Fair Hous. Opportunities of Nw. Ohio v. Am. Family Mut. Ins. Co.*, 684 F. Supp. 2d 964, 973 (N.D. Ohio 2010) ("To invoke the 'futile gesture' doctrine, then, [plaintiff] must produce evidence that her interest in purchasing homeowners insurance was cut short by 'actual knowledge' of the defendant's discriminatory practices.") (citing *Darby*, 806 F. Supp. at 174); *Kennedy v. City of Zanesville*, 505 F. Supp. 2d 456, 496 (S.D. Ohio 2007).

This theory was first applied in the employment discrimination context in *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324 (1977), and extended to the FHA context. *Id.* However, courts have expressed concern about the application of *Teamsters* to cases where the inference of discrimination is unduly speculative. *273 Lee Ave. Tenants Ass'n*, 330 F. Supp. 3d at 794. As the Second Circuit explained in *Brown v. Coach Stores*, "the leniency afforded individual plaintiffs [in *Teamsters*] . . . hinged on an initial finding of a history of discrimination by the employer to the class of plaintiffs." 163 F.3d 706, 711 (2d Cir. 1998). In cases where there is no class-wide finding of discrimination, application of the futility rule is more problematic. *273 Lee Ave. Tenants Ass'n*, 330 F. Supp. 3d at 795. "Although the ripeness doctrine does not require 'a futile gesture as a prerequisite for adjudication in federal court,' conclusory or unsupported allegations of futility will not suffice." *Id.* (quoting *Safe Harbor Retreat, LLC v. Town of E. Hampton*, No. 14-CV-2017, 2015 WL 918771, at *5 (E.D.N.Y. 2015), *aff'd*, 629 F. App'x 63 (2d Cir. 2015)).

Here, Walker admits, in substance, that she was not "reliably informed" of any discriminatory policy, and demonstrates throughout the Complaint that she was not informed at all about Wisdom Woods, its structure, its criteria, or its relationship with the Individual Defendants and RTTL. This is a prerequisite to establishing direct injury under the futile gesture theory. *McClain*, 424 F.3d at 733. Her only source of any information at all was a non-descript "news piece" about RTTL — an entity that does not make decisions about land sales for Wisdom Woods. "A reasonable jury could not find that a single second-hand remark purporting to summarize the views of a non-decision-maker suffices as reliable evidence of a policy of discrimination." *Lawrence v. County of Orange*, 2012 U.S. Dist. LEXIS 207366, at *26 (S.D.N.Y. Sept. 20, 2012).

There is no indication that Walker was reliably informed of, or had actual knowledge of, any discriminatory policy of Wisdom Woods or the Individual Defendants. Her own Complaint

never alleges she knew Wisdom Woods existed as an entity distinct from RTTL, let alone that she consciously avoided approaching it out of fear of discrimination. Walker's silence toward Wisdom Woods and the Individual Defendants reflects ignorance, not deterrence. For that reason, Walker's reliance on the 'futile gesture' theory fails as a matter of law.

III.    **Walker cannot show she suffered a concrete and particularized injury traceable to the Defendants.**

"To satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered a concrete and particularized injury-in-fact that is actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). An injury in fact is a "direct injury" resulting from the challenged conduct. *Steger v. Franco, Inc.*, 228 F.3d 889, 892 (8th Cir. 2000).

The FHA's definition of an "aggrieved person" entitled to sue, 42 U.S.C. § 3602(i), only confers standing as broadly as is permitted by Article III of the Constitution. *Keller v. City of Fremont*, 719 F.3d 931, 947 (8th Cir., 2013) (citing *Havens Realty*, 455 U.S. at 372); *LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 424 (2d Cir. 1995). The breadth of the FHA's standing provision therefore does not excuse Walker from satisfying Article III's own requirements as to Wisdom Woods and the Individual Defendants. Walker must show a concrete, particularized injury fairly traceable to each Defendant she sues – and she does not.

Walker cannot show an injury in fact because Walker never applied to Wisdom Woods to purchase land, she only speculates that she would have been rejected, and she cannot invoke the futile gesture doctrine. *McClain*, 424 F.3d 728. *See also Darby*, 806 F. Supp. at 174–75 ("Nonetheless, because the court finds that plaintiffs did not apply for a vacant apartment and were

not excused from doing so under the futile gesture doctrine, summary judgment will be entered against plaintiffs as to Count I and II."); *cf. Taylor v. Harbour Pointe Homeowners Ass'n*, 690 F.3d 44, 50 (2d Cir. 2012) (FHA disability claim was "groundless and frivolous" because the plaintiff had not requested the accommodation the statute required); *cf. Miller v. City of Wickliffe*, 852 F.3d 497, 503 (6th Cir. 2017) (plaintiffs who never applied for a permit "cannot demonstrate an injury in fact" because their injury is "conjectural and hypothetical, rather than concrete and particularized"); *Lewis v. Ascension Parish Sch. Bd.*, 2009 U.S. Dist. LEXIS 140873, at *21 n.31 (M.D. La. Aug. 5, 2009) (*reversed and remanded on other grounds*) ("[H]e has not demonstrated that the School Board is the owner of property that is for sale in the parish, that it discriminated against potential buyers on the basis of race, that potential buyers were reliably informed of a policy of discrimination on the School Board's part and would have taken steps to purchase property but for such policy, and that the School Board would have discriminated against a potential buyer had that buyer expressed an interest in the property.")

The undisputed fact that she never approached Wisdom Woods or the Individual Defendants and she was not reliably informed about any discriminatory policies deprives her of standing against Wisdom Woods and the Individual Defendants. Accordingly, her FHA claim (Count 1) must be dismissed.

## IV.    Walker's Remaining Statutory Claims Are Duplicative of Her Failed FHA Claim and Fail for the Same Reasons.

### A.    Walker's 1981 and 1982 Claims Fail for the Same Reason Her FHA Claim Fails: Walker Lacks Standing Because She Never Entered into a Contract With the Defendants

Walker's remaining claims under 42 U.S.C. §§ 1981, 1982, and 1985 are duplicative of her FHA claim, as they involve the very same transaction that never occurred.[2] *See Gallagher v. Magner*, 619 F.3d 823, 839 (8th Cir. 2010) ("Appellants' claims pursuant to 42 U.S.C. §§ 1981, 1982, and 1985 are duplicative with their FHA disparate treatment claim, as the underlying constitutional violations for these claims require a showing of discriminatory intent.") (citing *Dirden v. Dep't of Hous. & Urban Dev.*, 86 F.3d 112, 114 (8th Cir. 1996) (sections 1981 and 1982); *Larson v. Miller*, 76 F.3d 1446, 1454 (8th Cir. 1996) (section 1985)). The same requirement to have contact or initiate a transaction with the defendant in an FHA claim also applies to claims under 42 USCS § 1981 and 42 USCS § 1982.

Because Section 1981 and 1982 are traditionally construed *in pari materia* due to their similar wording and common lineage, courts apply the contractual and transactional nexus requirements of 1981 directly to claims brought under 1982. *Garrett v. Tandy Corp.*, 295 F.3d 94 (1st Cir. 2002). Section 1981 does not provide a general cause of action for race discrimination if in fact it occurred. It prohibits intentional racial discrimination ***in the making and enforcing of contracts***. "The requirement remains that a plaintiff must point to some contractual relationship in order to bring a claim under Section 1981." *Youngblood v. Hy-Vee Food Stores, Inc.*, 266 F.3d 851, 855 (8th Cir. 2001). But here, the Complaint discloses no such contractual relationship of any kind. As stated above, Walker never even attempted to approach Wisdom Woods or the individual defendants, and her rejection from the private association did not prevent her from doing so.

The "preeminent case" dealing with 1981 and 1982 claims is *Morris v. Office Max, Inc.,* 89 F.3d 411 (7th Cir. 1996). *Garrett,* 295 F.3d at 99. There, two black customers sued under 1981

---

[2] Her Arkansas state law claims are also duplicative. To the extent they are not, if the federal claims are dismissed the Arkansas claims should be dismissed for lack of subject matter jurisdiction.

after being hassled while browsing innocently in a retail store. *Id.* The Seventh Circuit rejected the suit on the ground that the plaintiffs could not "point to specific facts showing that Office Max deprived them of any of the enumerated rights in § 1981 . . . specifically, the right to make and enforce a contract. They were denied neither admittance nor service, nor were they asked to leave the store." *Garrett*, 295 F.3d at 99 (citing *Morris*, 89 F.3d at 414). In that case, at least the Plaintiffs entered the store, yet their claim was still rejected. Here, Walker never even entered the store.

Another representative case is *Morris v. Dillard Dep't Stores*, 277 F.3d 743 (5th Cir. 2001). There, an African-American woman had browsed in a department store without making any purchases. 277 F.3d at 746. She was subsequently accused of shoplifting, arrested, and temporarily banned from returning to the store. *Id.* at 746-47, 751. The woman brought suit under section 1981, claiming that the banishment amounted to a race-based deprivation of a contractual interest. *Id.* at 751. The Fifth Circuit rejected her section 1981 claim because she did not "offer evidence of some tangible attempt to contract with [the defendant's store] during the course of the ban, which could give rise to a contractual duty between her and the merchant, and which was in some way thwarted." *Id.* at 752. The facts were "too speculative to establish loss of any actual contract interest owed to her by [the defendant]." *Id.* at 753.

In *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1117-18 (10th Cir. 2001), *cert. denied*, 534 U.S. 1131 (2002), the Tenth Circuit ruled that a woman of African-American descent who allegedly had been ejected from a store on the basis of her race could not pursue a section 1981 claim because she had neither attempted nor planned to make any specific purchase, and accordingly, could not prove any interference with a contractual relationship. The court made plain that "the mere expectation of being treated without discrimination while shopping" will not support a claim under section 1981. *Id.* at 1118. In contrast, the court upheld a judgment for another

African-American woman, ejected at the same time, who was attempting to redeem a coupon that she had received incidental to a previous purchase. *Id.* at 1103-05. The court concluded that the coupon was tantamount to an option contract, and that the store could be held liable for its race-based denial of the right to redeem it. *Id.* at 1104.

The distinction drawn by the Tenth Circuit between the two plaintiffs perfectly illustrates why Walker lacks standing. She had neither attempted nor planned to make any specific purchase. At best, she was generally interested in purchasing land in the area. She cannot even be compared to a shopper who entered a store and was discriminated against while merely browsing. All she did was apply for membership with RTTL – a completely separate entity that does not own, sell, lease, or advertise real estate and has no power to contract on Wisdom Woods' or the individual defendants' behalf. This is like a Plaintiff who experienced discrimination at a Radio Shack and then sued Computer City.

Even if the Court accepts her argument that applying for RTTL membership is tantamount to entering the Wisdom Woods store – at best Walker can be compared to the shopper who entered the store to browse and her claim must fail. By her own account, she had no intention to purchase a specific plot of land, and she was looking for a vacation home or an investment – and Wisdom Woods is neither. It is like a customer who walks into a Radio Shack store intending to purchase groceries instead of electronics. Walker had no contact with the defendants and did not attempt to initiate a contract. Accordingly, she lacks standing because she does not possess any rights under an existing or proposed contract.

### B. Walker Has No Standing Against the Individual Defendants for Her 1985 Claim Because She does not Identify an Underlying Violation of Law.

Under 42 USCS § 1985 a plaintiff cannot maintain a claim without identifying an underlying violation of law. Section 1985 is a purely remedial statute that provides a civil cause

of action and remedy but grants no substantive, stand-alone rights . *Federer v. Gephardt*, 363 F.3d 754, 758 (8th Cir. 2004) ("Section 1985 is a statute which provides a remedy, but it grants no substantive stand-alone rights."); *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 376 (1979). Consequently, a 42 USCS § 1985 claim is not an independent substantive claim; the source of the right or law allegedly violated must be found elsewhere. *Federer,* 365 F.3d, at 758.

To prove a conspiracy under Section 1985, a plaintiff must show that: (1) the defendant had an agreement with at least one other person and participated or caused something to be done in furtherance of the agreement; (2) the agreement was to deprive the plaintiff of a protected right; (3) the defendants were motivated by a dislike or hateful attitude toward a specific class of people and that the plaintiff was a member of that class; and (4) the conspiracy caused deprivation or injury to the plaintiff. *Chambers v. Omaha Girls Club,* 629 F. Supp. 925, 935 (D. Neb. 1986) (citing *Griffin v. Breckenridge,* 403 U.S. 88, 103-04). Theoretical, conjectural, or hypothetical speculation of an injury is insufficient to support standing or survive a motion to dismiss. *Constitution Party v. Nelson,* 639 F.3d 417, 420 (2011).

Walker alleges that the individual defendants conspired to violate her rights under the FHA and/or Sections 1981 and/or 1982. To restate what was mentioned above, those claims fail because she never approached these defendants to purchase land and nothing prevented her from approaching them. Without an underlying claim her 1985 claim also fails.

Walker acknowledges that RTTL and Wisdom Woods are two separate entities. (Compl. ¶ 53.) She alleges that RTTL "is tasked with vetting the people who want to join RTTL and ensuring that they are 'of European heritage' [and that] RTTL only admits into its Association people who are heterosexual, white, and non-Jewish." (Compl. ¶ 53.)

She then alleges that RTTL "distributes land to its members by selling shares of the LLC, which are tied to a particular plot of land." (Compl. ¶ 54.) But in the same breath, she acknowledges that the land must be purchased from the LLC. *Id.* ("Only members of RTTL's all-white Association are eligible ***to buy land from the LLC***.") (emphasis added). By her own account, RTTL is not engaged in the actual sale of land, and she even acknowledges that RTTL states that expressly. (Compl. ¶ 59) (RTTL purports that it "does not engage in sales or rental of real estate.") Rather she alleges that RTTL merely acts as a vetting source for Wisdom Woods, and Wisdom Woods sells the land to its members, and "once a member buys a share in the LLC, the associated land is their [the members'] property" ***not RTTL's property***. (Compl. ¶ 60.)

Walker ultimately alleges that the members of Wisdom Woods own land by owning shares of an LLC and that the members agree not to sell "their property" to potential buyers who are not members of RTTL. Accordingly, the Complaint acknowledges that the owners of the land are the members of the LLC, not RTTL, and the decision to sell belongs to the members of the LLC, not RTTL.

Stated differently, the Complaint alleges a conspiracy theory between Wisdom Woods, RTTL, and the individual defendants that amounts to a form of a restrictive covenant that only allows RTTL members to enter. The conspiracy relies on several untested assumptions: that if Walker had actually approached a member of the LLC she would have found that there was land for sale; that she would have been rejected; and that the land would have remained available for sale to others thereafter. But her complaint lacks any allegations to support those assumptions because by her own admission she never tested them. She does not allege facts that identify an LLC member who was offering his share for sale. She does not allege facts that show she applied

to purchase land from a landowner and was rejected. And she does not allege facts that the land remained for sale to others thereafter.

The law recognizes that within the context of Fair Housing violations so called "testers" have standing under certain circumstances. *See Acheson Hotels, LLC v. Laufer,* 601 U.S. 1, 3 (2023); *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 373 (1982); *NDN Collective v Retsel Corp*, 784 F Supp 3d 1221, 1235 (DSD, 2025). But Walker does not claim to be a tester. Instead, she claims to be a good faith purchaser who was genuinely interested in making a bona fide offer to become a member of Wisdom Woods. If she were a tester, she most certainly would have to test her conspiracy theory to have standing. All the more so, if she genuinely wanted to make a bona fide offer, she cannot claim injury in fact when she never approached the landowner. Until she is actually rejected by Wisdom Woods or the Individual Defendants, her injury remains speculative and abstract. But "[s]tanding ensures that courts decide disputes over violations of a person's rights, not a defendant's compliance with the law in the abstract." *Laufer*, 601 US at 14 (Thomas, J. concurring).

To "test" her conspiracy theory required two steps: applying to RTTL and then making a bona fide offer to the actual owners of the land. She only completed step one, and therefore her "test" is incomplete, and her conspiracy theory remains nothing more than speculative and abstract. Perhaps if she had actually approached the owners of the property and was rejected, she would have a leg to stand on. But she didn't, so she doesn't.

## CONCLUSION

For the foregoing reasons, Defendants Wisdom Woods LLC, Eric Orwoll, Peter Csere, and Scott Thomas Hallowood respectfully request that this Court dismiss the Complaint against them in its entirety under Rule 12(b)(1) for lack of subject matter jurisdiction.

Dated: August 3, 2026

Respectfully submitted,

/s/ Jonathan Gross
Jonathan Gross
Law Office of Jonathan Gross
2833 Smith Ave., Suite 331
Baltimore, MD 21209
(443) 813-0141
jonathansgross@gmail.com

*Counsel for Defendants Wisdom Woods LLC, Eric Orwoll, Peter Csere, and Scott Thomas*

*Hallowood*