**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**NORTHERN DIVISION**

MICHELLE WALKER,
Plaintiff,

Case No.
3:26-cv-00151-DPM

v.

RETURN TO THE LAND, et al
Defendants.

**DEFENDANTS WISDOM WOODS LLC, ERIC ORWOLL, PETER CSERE, AND SCOTT THOMAS HALLOWOOD'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

## INTRODUCTION

This Motion turns on a single, undisputed fact: Plaintiff never had any contact with Wisdom Woods, Eric Orwoll, Peter Csere, or Scott Thomas Hallowood. That fact is jurisdictional, and no amount of argument about RTTL's ideology can substitute for it. Plaintiff's Opposition argues that contact would have been futile, but her own Declaration proves the opposite. It reveals that RTTL's rejection notice invited her to appeal by email—and that she never attempted it. An open invitation to appeal is the opposite of futility; it shows there was a real chance to learn more or even to negotiate, and Plaintiff chose not to take it. Even setting that aside, the email would only have reached RTTL, not the individual men and the company she has actually sued. As to those Defendants, Plaintiff does not allege she ever tried to reach them, or had any reliable reason to believe trying would be pointless. What she does offer are unauthenticated, irrelevant website and social-media screenshots, most predating every event by months or years. A plaintiff does not acquire a cause of action against every person associated with an organization she finds repugnant merely by reading about it in the news; she must show that she personally sought something from, was offered something, and was denied something by, the specific defendants she sues. Plaintiff cannot make that showing. The Complaint against

Wisdom Woods LLC, Eric Orwoll, Peter Csere, and Scott Thomas Hallowood should be dismissed under Rule 12(b)(1).

## ARGUMENT

### I. PLAINTIFF NEVER HAD ANY CONTACT WITH WISDOM WOODS OR THE INDIVIDUAL DEFENDANTS, AND THAT ALONE IS FATAL TO STANDING.

Article III standing requires an injury "fairly traceable to the challenged action of the defendant"—not to the actions of some other, related party. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *see also Arkansas ACORN Fair Hous., Inc. v. Greystone Dev., Ltd. Co.*, 160 F.3d 433, 435 (8th Cir. 1998) (affirming summary judgment where the plaintiff offered no specifics tying its injury to the defendant's conduct). In the FHA context, that means "direct contact" between the plaintiff and the specific defendant sued; without it, there is no injury-in-fact as to that defendant. *Saunders v. Farmers Ins. Exch.*, 440 F.3d 940, 942 (8th Cir. 2006); *McClain v. Am. Econ. Ins. Co.*, 424 F.3d 728 (8th Cir. 2005); *see also Chorosevic v. MetLife Choices*, 2007 U.S. Dist. LEXIS 54332, at *18 (E.D. Mo. July 26, 2007). In *Suanders,* the court rejected the plaintiffs' "deterrence theory" which argued they had standing without direct contact because knowledge of the practices deterred them from applying—reiterating that direct contact with an insurer, or at least an authorized agent, is a prerequisite to show that a deterred plaintiff was reliably informed of the discriminatory policies.

Plaintiff does not allege that she ever emailed, called, messaged, or otherwise attempted to reach Wisdom Woods, Orwoll, Csere, or Hallowood, at any time, about any parcel of land. (Mot. Dismiss at 8–9.) Her own Complaint confirms it: the only application she describes is an application to "RTTL's Association" (Compl. ¶ 93), a private membership organization she alleges is legally distinct from Wisdom Woods (Compl. ¶¶ 21–23, 52–55). Her Complaint never alleges she tried to reach Wisdom Woods or any Individual Defendant directly, and it never

alleges she believed doing so would be futile. That theory surfaces for the first time in her Opposition and Declaration, filed only after Defendants' factual jurisdictional challenge.

Plaintiff's Opposition spends most of its pages describing what RTTL's founders believe and have said publicly. None of that is in dispute for purposes of this Motion, and none of it answers the only question that matters: whether Plaintiff herself was offered something by, sought something from, and was denied something by, Wisdom Woods or the Individual Defendants. A plaintiff does not obtain standing against every person or entity associated with an organization simply because that organization holds views she finds repugnant; she must show a concrete, particularized injury that these Defendants caused her. *Lujan*, 504 U.S. at 560, 573–74 (a "generalized grievance" shared by anyone who disapproves of the challenged conduct does not satisfy Article III). Even Plaintiff's civil-conspiracy theory under 42 U.S.C. § 1985 does not relieve her of this burden: conspiracy supplies a vehicle for imputing liability among co-conspirators once an injury is shown; it does not manufacture the injury itself. Plaintiff has never had a transaction, an offer, or a refusal involving any land these Defendants controlled—and nothing in her Opposition contends otherwise.

## II. PLAINTIFF CANNOT INVOKE THE FUTILITY DOCTRINE AND PROVIDES NO EXCUSE FOR NOT DIRECTLY CONTACTING WISDOM WOODS OR THE INDIVIDUAL DEFENDANTS

Plaintiff's Declaration reveals, for the first time, that the message rejecting her RTTL application told her: "If you believe this decision was made in error, you may contact apply@email.returntotheland.org." (Walker Decl. ¶ 23.) This fact cuts entirely one way, and it is not in Plaintiff's favor. Plaintiff's futility theory requires her to show that further pursuit would have been pointless; an open invitation to engage in further discussion is proof of the opposite. Whether RTTL would have explained its reasoning or reversed course entirely is something only

Plaintiff's own conduct could have revealed, and she chose not to find out. Because Plaintiff bears the burden of proving futility, *McClain*, 424 F.3d at 733, that uncertainty is resolved against her, not for her. A plaintiff invoking futility to excuse an incomplete transaction faces a "difficult task" in proving every element of that doctrine, *Lawrence v. County of Orange*, 2012 U.S. Dist. LEXIS 207366, at *25 (S.D.N.Y. Sept. 20, 2012). *See also McClain*, 424 F.3d at 733 (quoting *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 364 (1977)). An invitation to appeal is not evidence of futility. It's evidence against it.

Even so, the email would only have reached RTTL, not these Defendants. Plaintiff herself alleges that RTTL is legally separate from Wisdom Woods (Compl. ¶¶ 21–23). An exchange with an RTTL volunteer would not have been contact with Wisdom Woods, or with Orwoll, Csere, or Hallowood. Her rush to sue without even taking a minute to appeal to RTTL speaks volumes about her lack of even the most minimal effort to speak to the other Defendants. She cannot invoke futility when she never tried to contact them in the first place.

Futility requires more than a plaintiff's say-so; she must show she was reliably informed of the specific defendant's policy and reasonably believed contacting that defendant would be pointless. *McClain*, 424 F.3d at 733. By her own account, Orwoll, Csere, and Hallowood were easily accessible. Orwoll gave on-the-record interviews to Sky News, the New York Times, and CNN (Compl. ¶ 71); Csere appeared on a podcast to publicly discuss RTTL's membership criteria (Compl. ¶ 67); and RTTL's founders collectively "went on a tour of mainstream media outlets" allegedly to promote the Arkansas community and attract members (Compl. ¶ 89). Plaintiff read about these men in a "local news piece" she says brought RTTL to her attention in the first place. (Walker Decl. ¶ 5.) Just as she was able to find them for the purpose of serving this lawsuit, she could just as easily have contacted them to obtain information about Wisdom

Woods, or about any real estate opportunity she believed was being offered to her. But she never tried. Instead, she immediately sought them out to sue them.

## III. PLAINTIFF'S EXHIBITS ARE ATTACHED TO AN INVALID UNSWORN DECLARATION WITH NO PERSONAL KNOWLEDGE; AND TO THE EXTENT THEY ARE CONSIDERED, THEY ARE EITHER INCOMPLETE, IRRELEVANT OR CUT DIRECTLY AGAINST HER.

### A. Plaintiff's Counsel's declaration (ECF 23-4) does not comply with 28 U.S.C. § 1746 and on that basis the declaration and all attached Exhibits should not be considered.

Plaintiff's Counsel, Miriam Pierson, provided a declaration with seven Exhibits, A through G. ECF 23-4. These Exhibits are not properly before the Court and should not be considered in deciding this Motion. First, the declaration authenticating them does not comply with 28 U.S.C. § 1746. Compare Pierson Decl. at 3, with no statement that the foregoing is made "under penalty of perjury" and no date of execution, with Walker Decl. (ECF 23-1) at 5, correctly including a declaration "under penalty of perjury" followed by the date. An unsworn declaration must be "subscribed… as true under penalty of perjury, and dated" in substantially the statutory form before it carries the "like force and effect" of a sworn affidavit. 28 U.S.C. § 1746. A declaration that omits this language does not satisfy the statute. *Elder-Keep v. Aksamit*, 460 F.3d 979, 984 (8th Cir. 2006) ("a district court may properly reject unsworn documents."). Plaintiff's counsel evidently knows the correct form, given its inclusion in Ms. Walker's declaration filed the same day; its absence from the Pierson declaration is not a trivial oversight when that declaration's only function is to authenticate the exhibits Plaintiff now asks this Court to treat as competent evidence of a jurisdictional fact. Accordingly, Exhibits A-G should not be considered on this factual challenge at all.

### B. Plaintiff's counsel offers no foundation authenticating the Exhibits

Moreover, Plaintiff's counsel offers no foundation for how she verified the authenticity of the documents. The Pierson declaration states only that counsel captured the screenshots using a web-capture service, not that she has personal knowledge of authenticity. *See* Fed. R. Evid. 901(a) (proponent must produce evidence sufficient to support a finding that an item is what it is claimed to be). For instance, the declaration offers no basis to conclude that the governing documents (Exhibits D and E) were the operative versions, particularly when Exhibit E is labeled as "version 2.0, October 2024." *See* Fed. R. Civ. P. 56(c)(4) (declarations must be made on personal knowledge).

**C. Plaintiff's Central Exhibit is Deceptively Incomplete and Cuts Against Her**

Plaintiff Michelle Walker submitted a sworn declaration under the penalty of perjury. ECF 23-1. Her central claim that this entire lawsuit rests upon is that applying to RTTL amounted to pursuing a real estate transaction. That claim rests in part on her own sworn description of the RTTL website. Her Declaration states that "[t]he Return to the Land website confirmed that one of the organization's goals was to 'facilitate individuals and groups that share common ancestry to purchase land in rural areas,'" and that she was troubled enough by what she saw to "take photos" of it, which she submits as Exhibit 1. (Walker Decl. ¶¶ 8–9.) But the screenshot she chose to submit as Exhibit 1 crops off at the bottom of the page, immediately after a bolded heading that reads "Legal Disclaimer" — stopping just short of the disclaimer itself. The Internet Archive's capture of that same page from October 6, 2025, weeks before Plaintiff applied, shows what her exhibit does not: directly beneath that heading, RTTL's own website states, in plain terms, "RTTL does not engage in the sale or rental of real estate." Def. Reply Br. Exhibit 1, Csere Decl., Exhibit A.

That is not a minor omission. The very page Plaintiff quotes to support her belief that she was pursuing a real estate transaction told her, on its face, that RTTL does no such thing. That

defeats the "reliably informed" showing her futility theory requires, *McClain*, 424 F.3d at 733, in two independent ways. If Plaintiff read only as far as what she cropped into Exhibit 1, she was never informed — reliably or otherwise — that RTTL sold land at all. And if she read the whole page, as her own sworn quotation from elsewhere on it suggests she must have, she was told the opposite of what she now claims to have believed, and cannot credibly say she held a good-faith understanding that her application concerned a land sale by RTTL, let alone by Wisdom Woods or the Individual Defendants.

### D. Plaintiff's Own Exhibits show that she was not reliably informed to support a futility argument.

As argued in the Motion (ECF 20, at 8-11), Plaintiff was not "reliably informed" of anything before she applied. By her own account, she learned RTTL's specific criteria only "after I applied to Return to the Land," through her own post-rejection research. (Walker Decl. ¶ 24). Indeed, when RTTL's application asked her views on "segregation" and "multiculturalism," she answered that she did not support segregation and preferred "a community with a variety of different ancestral origins" (Walker Decl. ¶ 12)—confirming she neither understood nor anticipated what RTTL was, let alone what Wisdom Woods's separate admission process required. *See McClain*, 424 F.3d at 733. Nor can she point to anything she actually saw and relied on. Whether framed as a good-faith buyer or a tester,[1] Plaintiff's theory obviously requires at minimum some form of communication offering real estate to have standing. It is not enough

[1] The Complaint alleges the fact pattern of a good-faith buyer, not a tester under *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373–74 (1982): it alleges Plaintiff wanted the land as an investment or vacation property (Compl. ¶¶ 96, 100) and seeks compensatory damages for the "investment and income-generating benefits" she says she was denied (Compl. ¶ 106) — relief that presupposes an actual, injured purchaser, not a tester, whose injury under *Havens* is limited to the denial of truthful information under § 3604(d). The word "tester" appears nowhere in the Complaint. Plaintiff's Opposition nonetheless invokes tester case law and the reduced burden that comes with it. (Opp. at 16 (citing *Kyles*, 222 F.3d at 297).) A tester and a good-faith buyer are ***not*** two labels for one claim; they rest on different facts and carry different elements and remedies. If Plaintiff wishes to proceed as a tester, her remedy is to amend her Complaint and plead that fact pattern — not to import it into an Opposition brief resisting dismissal of the buyer theory she actually pled. *See Morgan Distrib. Co. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989).

to simply assert that the owners of real estate are racist. But she points to nothing but an unnamed, undated "local news piece" that she saw months before she applied to RTTL (Walker Decl. ¶ 5). Her declaration only adds a set of screenshots which had not existed for months or years prior to her application that her counsel compiled for this litigation. Injury-in-fact requires more than curated litigation exhibits assembled long after the fact.

## IV. PLAINTIFF'S NEWLY-INTRODUCED AGENCY THEORY CANNOT SUBSTITUTE FOR THE MISSING CONTACT.

Unable to establish direct contact or futility as to these Defendants, Plaintiff's Opposition pivots to a theory of actual authority, apparent authority, and ratification never once mentioned in the Complaint. (Opp. at 17–22.) The Complaint pleads direct claims against each Defendant and a civil-conspiracy claim under 42 U.S.C. § 1985 (Compl. ¶¶ 117–121); it never uses the words "agent," "authority," or "ratif[y]." Agency is its own theory of liability, with its own elements—a principal, an agent, a scope of delegated authority, a manifestation or act of ratification—and a plaintiff must plead facts establishing each rather than introduce the theory for the first time in briefing. *Morgan Distrib. Co. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989) ("complaint may not be amended by the briefs in opposition to a motion to dismiss").

Plaintiff cannot even say who the agent is supposed to be. Her Opposition argues RTTL acted on Wisdom Woods's behalf (Opp. at 17–22), but her Complaint alleges the opposite: Wisdom Woods "was formed for the purpose of purchasing the land and selling sub-parcels of land to members of Return to the Land, Ozarks Chapter" (Compl. ¶ 23)—casting Wisdom Woods as the instrument of RTTL's purposes, not its principal. The confusion deepens with Orwoll, Csere, and Hallowood, each alleged to hold overlapping roles in both organizations (Compl. ¶¶ 24–28). Additionally, an agency theory contradicts the § 1985 conspiracy Plaintiff did plead, which alleges that Orwoll, Csere and Hallowood "conspired or joined together" as

independent actors (Compl. ¶ 118)—the opposite premise from a hierarchical principal-agent relationship in which one party's conduct is imputed to another. Finally, Plaintiff cannot have relied on an agency relationship involving an entity she admits she did not know existed until this suit was contemplated. (Mot. Dismiss at 4, 10.)

Even considered, it does not cure the missing injury. Agency doctrine assigns responsibility for an injury; it does not create one. Plaintiff still never sought to buy a specific parcel from anyone with authority to sell one. Imputing RTTL's membership rejection to Wisdom Woods means, at most, that Wisdom Woods is charged with rejecting her RTTL application, not with refusing to sell her land. Actual authority is bounded by its scope, Restatement (Third) of Agency § 2.01, and Plaintiff's own Complaint confirms that decisions to transfer a parcel belong to individual LLC members, subject only to a Board veto (Compl. ¶¶ 59–61, 85–86)—nothing suggests RTTL was ever delegated authority to negotiate or bind a sale. Apparent authority requires a manifestation by the principal to the third party, Restatement (Third) of Agency § 2.03, and Plaintiff alleges none, because she did not know Wisdom Woods existed. Ratification requires the principal's knowing assent to the agent's specific act, Restatement (Third) of Agency § 4.01, and Plaintiff does not allege any Defendant knew of her particular rejection, let alone adopted it. On the contrary, as stated above, she was invited to appeal the decision but declined to do so.

## V. THE "CONTINUED AVAILABILITY" ELEMENT IS ABSENT.

A prima facie discriminatory-refusal claim requires that housing "remained available" after the alleged refusal. *Rowe v. Union Planters Bank*, 289 F.3d 533, 535 (8th Cir. 2002). The only record evidence consists of snapshots from January 2024, April–May 2024, March–April 2025, May–June 2025, and June–July 2025. (Ex. A at 1–5.) Every one of them predates

Plaintiff's application, and none of them says anything remained available after her rejection in early 2026.

## CONCLUSION

Strip away the rhetoric about RTTL's ideology, and this Motion presents a simple jurisdictional question: did Plaintiff ever have any contact with Wisdom Woods, Orwoll, Csere, or Hallowood? She did not. Until she does, the Complaint against Wisdom Woods LLC, Eric Orwoll, Peter Csere, and Scott Thomas Hallowood should be dismissed in its entirety under Rule 12(b)(1).

Dated: September 11, 2026

Respectfully submitted,

/s/ Jonathan Gross
Jonathan Gross
Law Office of Jonathan Gross
2833 Smith Ave., Suite 331
Baltimore, MD 21209
(443) 813-0141
jonathansgross@gmail.com

Counsel for Defendants Wisdom Woods LLC, Eric Orwoll, Peter Csere, and Scott Thomas Hallowood

## CERTIFICATE OF SERVICE

I hereby certify that on September 11, 2026, a copy of the foregoing was filed electronically via the Court's CM/ECF system, which will notify all counsel of record.

/s/ Jonathan Gross